IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

GORDON BUNTON,                )
                              )
         Plaintiff,           )
                              )
v.                            )    Case No. CIV-11-335-JHP
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
         Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Gordon Bunton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 23, 1967 and was 43 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a seismic driller helper, poultry plant laborer, and tree trimmer. Claimant alleges an

3

inability to work beginning August 4, 2006 due to limitations resulting from neck and back pain, pain in his arms and hands, fatigue, anxiety, panic attacks, and decreased concentration.

## Procedural History

On January 3, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 13, 2009, the ALJ issued an unfavorable decision. By Opinion and Order entered March 31, 2011, this Court reversed the ALJ's decision and remanded the case for further proceedings. The Appeals Council remanded the case to the ALJ.

On May 12, 2011, an administrative hearing was conducted before ALJ Osly F. Deramus. On July 25, 2011, the ALJ issued a second opinion denying Claimant's applications. The Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with some limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) finding Claimant did not meet a listing; (2) failing to properly consider the opinions of Claimant's treating physicians; (3) improperly assessing Claimant's credibility; and (4) reaching an RFC which was not supported by substantial evidence.

### Evaluation for Listing

In his decision, the ALJ determined Claimant suffered from the severe impairments of mild left carpal tunnel syndrome, degenerative disk disease of the cervical spine status post fusion, mild degenerative disk disease of the lumbosacral spine, depressive disorder, and anxiety disorder with panic attacks. (Tr. 392). The ALJ found Claimant retained the RFC to lift and/or carry at least ten pounds occasionally and at least ten pounds frequently, to stand and/or walk for at least two hours total during an eight hour workday, and to sit for at least six hours in an eight hour workday. Claimant was found to be able to occasionally climb ladders but frequently climb stairs. He could frequently stoop, crouch, crawl, kneel, and balance. Due to psychologically based

5

factors, Claimant was determined to be able to perform simple tasks with routine supervision. While he cannot perform detailed tasks, Claimant was able to relate to supervisors and peers on a superficial basis. He could relate to the public only in an incidental manner, and he could adapt to most work situations. (Tr. 397). The ALJ concluded that Claimant could perform sedentary work. After consultation with a vocational expert, he found Claimant could perform the representative jobs of clerical (e.g. mailer) and conductor assembler - both of which the ALJ found existed in sufficient numbers in the economy. (Tr. 407).

Claimant first contends the ALJ should have determined that he met Listing 12.04 (Affective Disorder). In order to meet a listing, Claimant must demonstrate he meets or equals all of the specified medical criteria of the particular Listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. <u>Andrade v. Sec. of Health & Human Services</u>, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to

work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments.

A finding that an impairment is medically equivalent to a listed impairment must be based solely on medical evidence. Kemp v. Bowen, 816 F.2d 1469, 1473 (10th Cir. 1987). Claimant suggests from his own testimony that he is markedly impaired in the areas of social functioning and concentration, persistence, or pace. Claimant was treated by Dr. Kenneth Miller in 2007. With regard to Claimant's mental issues, Dr. Miller found he suffered from depression with anxiety and panic attacks. (Tr. 333). He noted that Claimant's "agoraphobia persists." (Tr. 334).

On June 5, 2007, Dr. Carolyn Goodrich completed a Psychiatric

Review Technique form on Claimant. She found Claimant suffered from depressive syndrome characterized by anhedonia, sleep disturbance, psychomotor agitation or retardation, and difficulty concentrating or thinking. (Tr. 294). Dr. Goodrich also determined Claimant suffered from anxiety related disorders evidenced by recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week. (Tr. 296). Dr. Goodrich also diagnosed Claimant with a personality disorder, NOS as well as alcohol dependence. (Tr. 298-99). She found Claimant was moderately limited in the areas of difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. 301).

On the same date, Dr. Goodrich prepared a Mental Residual Functional Capacity Assessment on Claimant. She found he was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 305-06). She noted that Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (Tr.

8

307).

On May 12, 2008, Dr. R. T. Bowden prepared a Medical Source Opinion of Ability to Do Work-Related Activities (Mental) with regard to Claimant. Dr. Bowden found Claimant to be moderately limited in the areas of the ability to perform at a consistent pace without an unreasonable number or length of rest periods, the ability to handle normal work stress, and the ability to work with others without causing distractions. (Tr. 354-55).

In a consultative examination in January of 2010, Dr. Kathleen Ward found Claimant to suffer from Panic with Agoraphobia and Mood Disorder, NOS (currently depressed). (Tr. 757). Claimant reported that he liked to stay at home and avoid situations that make him nervous. He believed people were rude and he has a tendency to let them know they are. He reported lashing out at strangers. He stated he can't stand to be around large groups of people "yammering at once." He felt his irritability was caused by pain and not associated with changes in sleep or mood. (Tr. 754).

On February 24, 2010, a Psychiatric Review Technique was completed by Dr. Sally Varghese. Dr. Varghese also found Claimant suffered from depressive syndrome characterized by anhedonia, psychomotor agitation, decreased energy, and feelings of guilt of worthlessness. (Tr. 763). Like Dr. Goodrich, Dr. Varghese found

Claimant had recurrent severe panic attacks. (Tr. 765). She determined Claimant was moderately limited in the areas of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 770).

Dr. Varghese also completed a Mental Residual Functional Capacity Assessment on Claimant. She found Claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 774-75). She noted Claimant could perform simple tasks with routine supervision, could not perform detailed tasks due to panic disorder and depression, could relate superficially for work purposes, could relate to the public in an incidental manner, and could adapt to a work situation. (Tr. 776).

Other than referencing his own testimony and the general diagnoses of his condition, Claimant has failed to come forward with objective medical evidence to demonstrate that he is markedly limited in either social functioning or the area of concentration, persistence, or pace. No medical professional, either a treating physician or a consultative examiner, supports Claimant's position on the extent of his work-related limitations. This Court

attributes no error to the ALJ's findings that Claimant failed to meet a listing.

## Treating Physicians' Opinions

Claimant contends the ALJ failed to give appropriate weight to the opinions of his treating physicians. As indicated, Dr. Bowden completed a mental assessment on Claimant. He found moderate limitations in three areas. (Tr. 354-55). The ALJ recognized Dr. Bowden's treatment records and his findings. (Tr. 393). He also noted Dr. Bowden's Medical Source Statement but attributed "little weight" to it, finding "it is not fully supported by and consistent with the medical evidence of record as a whole." (Tr. 401). The ALJ rejects many findings based upon his perceived requirements for treatment and the fact Claimant did not engage in such treatment - for instance, finding Claimant was not in group therapy. He also draws the conclusion that Dr. Bowden's findings of moderate limitation "suggests that Dr. Bowden was relying on the subjective complaints of the claimant." Nothing in the record suggests this finding other than a subjective conclusion by the ALJ.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

11

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Instead of proceeding through the Watkins factors, the ALJ drew subjective, unsupported conclusions while imposing his own ideas concerning the required regimen of treatment for Claimant's condition. Moreover, Defendant's ad hoc argument that the form used by Dr. Bowden did not track with the definition for moderate limitations under the Social Security Regulations is unfounded. The ALJ did not include such a discrepancy as the basis for rejecting the treating physician's opinion. On remand, the ALJ shall re-evaluate the opinions of all of Claimant's treating physicians under the Watkins criteria. Should the ALJ have some question as to the precise standard used by the treating physicians in their standard reporting forms, he shall re-contact those physicians for the purpose of clarifying the basis upon which they made their conclusions on Claimant's limitations.

## Credibility Assessment

By Claimant's own concession, the ALJ accurately related Claimant's testimony regarding limitation in his social functioning and daily activities. (Tr. 398-99). The ALJ discounted his testimony, however, by stating Claimant's activities of daily living would be expected to be more limited than Claimant has shown. He watched his daughter after school, he experienced no problems with personal care, he was able to drive short distances, and his nephew lived with him at one point. (Tr. 399). The ALJ also set out that Claimant stopped working because of panic attacks, experienced problems with irritability and memory, experienced headaches, had sleep problems, and isolated himself. Claimant testified he was extremely reliant upon his wife. He experienced neck, back, hip, knee, and ankle pain without relief from medication. (Tr. 399).

Additionally, the ALJ is critical of Claimant failing to comply with his physicians' treatment recommendations. Of course, the ALJ also found his treating physicians' opinions were not entitled to significant weight.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

While this Court finds the ALJ may have properly linked his credibility findings to the medical record with regard to physical limitations, the same cannot be said for limitations upon Claimant's daily living activities or social functioning. Upon remand, the ALJ shall reassess his findings on credibility.

### RFC Determination

Since this Court has found the ALJ improperly evaluated the opinions of Claimant's treating physicians and Claimant's testimony on limitations of social functioning and daily activities, the ALJ shall also re-evaluate his RFC findings.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE